In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3272

LAWRENCE NORTHERN,

*Petitioner-Appellant,*

*v.*

ANA BOATWRIGHT,
Warden, New Lisbon
Correctional Institution,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:08-cv-184-bbc—**Barbara B. Crabb**, *Chief Judge.*

ARGUED NOVEMBER 10, 2009—DECIDED JANUARY 29, 2010

Before POSNER and FLAUM, *Circuit Judges*, and DER-YEGHIAYAN, *District Judge.*[*]

FLAUM, *Circuit Judge.* Lawrence Northern was convicted in Wisconsin state court of possessing more than

[*] Hon. Samuel Der-Yeghiayan, District Judge for the Northern District of Illinois, sitting by designation.

100 grams of cocaine with the intent to distribute it. After his direct appeal and a number of postconviction actions in Wisconsin courts, Northern petitioned the Western District of Wisconsin for a writ of habeas corpus. Northern claims his trial counsel was ineffective because he did not challenge an allegedly deficient jury instruction and did not object to an amended information filed by the prosecution on the day of trial. He also claims his appellate counsel was ineffective for not raising the first issue on direct appeal. The district court held that the state court reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), when it denied Northern's claims on the merits, and thus dismissed Northern's petition. We affirm.

## I. Background

On September 14, 2001, Northern and four co-defendants were charged in Wisconsin state court with possessing with the intent to deliver more than 100 grams of cocaine. There were six counts: one for each month between January and June of 2001. Northern was also charged individually with one count of possessing with the intent to deliver more than 15 but not more than 40 grams of cocaine, on September 20, 2001.

At a hearing on January 8, 2002, the afternoon before trial, Northern learned that one of his co-defendants, Hollie Peterson, had pleaded guilty and would be testifying for the state. The trial court offered an adjournment to allow the defendants time to prepare. Instead, all defendants agreed to proceed with the trial. The prosecutor

then requested and received permission to file an amended information[1] to eliminate the charges against Peterson.

The next morning the prosecutor filed the amended information. It not only dismissed Peterson's charges but consolidated the six counts of the previous information into one count: possessing with intent to distribute more than 100 grams of cocaine between January and September of 2001 (the additional count, charging Northern alone with possessing 15 to 40 grams of cocaine on September 20, 2001, remained). Northern did not have advance warning that the amended information would alter the charges against him. Neither his attorney nor any of his co-defendants' attorneys objected, and the case proceeded to trial that day.

At trial, two witnesses testified against Northern. The first, Sheri Mitchell, testified that in January of 2001, Northern delivered at least one-quarter kilogram of cocaine to her home so that she could process and sell it. Mitchell also testified that between January and July of 2001, Northern delivered at least one-quarter kilogram of cocaine to her home on five to ten different occasions. The second witness, Hollie Peterson, testified that on one

---

[1] The document in question was actually to be the second amended information, as the first information had been amended once previously. Because the first amendment has no bearing on this case, we will refer to the information filed the morning of the trial as the "amended information" and the information that proceeded it as the "original information."

occasion Northern delivered 125 grams of cocaine to her for processing and sale. She did not know the exact date but stated that she still had most of it when she was arrested in September of 2001.

At the close of trial on January 11, 2002, the trial court instructed the jury that, should it find any of the defendants guilty, it would have to answer questions on the verdict form as to the amount of cocaine involved. The judge also instructed the jury that it would have to be "satisfied beyond a reasonable doubt as to the amount of cocaine for each count." During deliberations, the jury asked the following question:

> On count one regarding one of the defendants we all agree that he is guilty of possession with intent to deliver cocaine as a party to a crime during January-September 2001. However, there is one juror who does not believe without reasonable doubt that there was more than one hundred grams. Do we have to have an unanimous vote on that as well or do we just answer that as no?

After discussing the matter with the defendants' attorneys, the prosecutor told the judge that defense counsel had advised him that they would rather have the jury write down the amount on which it could unanimously agree instead of having the court instruct the jury on a specific lesser included amount. The circuit court then told the jury the following:

> Your verdict must be unanimous and if you are unable to unanimously agree as to one of the defendants that the evidence established beyond a reason-

able doubt that he possessed with intent to deliver more than one hundred grams, then I would ask you to fill in whatever amount you can unanimously agree the evidence established beyond a reasonable doubt was possessed with intent to deliver.

After further deliberation, the jury found that all co-defendants, including Northern, were guilty of possession with intent to distribute more than one hundred grams of cocaine. The jury also found Northern guilty of possession with intent to distribute 15 to 40 grams of cocaine. On July 17, 2002, the district court sentenced Northern to 30 years in prison and 10 years extended supervision on the first offense and 20 years in prison and 10 years of extended supervision on the second offense, to run concurrently.

Northern appealed his conviction, arguing that the state violated his due process rights by violating its discovery obligations to him. On November 4, 2003, the Wisconsin Court of Appeals affirmed his conviction, finding that he had failed to preserve this issue for appellate review. The Wisconsin Supreme Court denied his petition for review on March 23, 2004.

In March 2005, Northern filed a motion for a new trial under Wis. Stat. § 974.06. Among other things, he argued for the first time that his trial counsel was ineffective because he failed to challenge the defective jury instruction. The circuit court denied Northern's motion without a hearing and without stating reasons. On appeal, the Wisconsin court of appeals held that Wis. Stat. § 974.06(4) barred Northern from raising his ineffective

assistance of counsel claim for the first time in a collateral proceeding. The court of appeals also rejected Northern's alternative argument that his postconviction counsel was ineffective for failing to raise ineffective assistance of trial counsel as an issue on direct appeal. The court of appeals noted that Northern, his trial attorney, his co-defendants, and his co-defendants' attorneys had all approved the jury instruction after a lengthy discussion on the record. It then reasoned that "[a] defendant who fails to object to errors in a proposed jury instruction waives his right to raise the issue on appeal. Postconviction counsel was, therefore, not ineffective for failing to raise this claim."

On August 18, 2006, Northern filed a pro se petition for a writ of habeas corpus directly with the Wisconsin court of appeals, pursuant to *State v. Knight*, 484 N.W.2d 540 (Wis. 1992) (holding that a habeas corpus petition filed in the court of appeals is the proper vehicle for raising claims of ineffective assistance of appellate counsel).[2] Among other claims, Northern argued that his appellate counsel was ineffective for failing to allege

---

[2] There is an exception to *State v. Knight*. When a defendant claims his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim, the proper procedure is to raise the claim in the circuit court either by a habeas petition or a § 974.06 motion. *See State ex rel. Rothering v. McCaughtry*, 556 N.W. 2d 136 (Wis. Ct. App. 1996); *see also State ex rel. Panama v. Hepp*, 758 N.W.2d 806, 808-09 (Wis. Ct. App. 2008) (discussing relationship between *Knight* and *Rothering*).

ineffective assistance of trial counsel based on trial counsel's failure to object to the amended information. The court of appeals denied Northern's petition on March 15, 2007, noting that he had failed to serve the petition on the state and that his claims were unlikely to succeed on the merits. In its written opinion, the court of appeals did not specifically mention Northern's argument based on the amended information.

On September 8, 2006, Northern filed his second § 974.06 motion. In this motion, he alleged that his trial counsel was ineffective for failing to object to the state's last-minute amendment of the information. The circuit court denied the motion without a hearing and without stating its reasons for doing so. Northern appealed. On November 29, 2007, the court of appeals affirmed, denying his claim on the merits. The court of appeals first noted that Northern had sufficiently explained his failure to raise this claim on direct appeal or in his earlier postconviction proceedings. The court then went on to reject Northern's argument that the trial court would have compelled the state to prosecute the multiple-count information as a sanction for not divulging its intent to broaden the timeframe it alleged. The appellate court also rejected Northern's argument that the multiple-count information would have resulted in his acquittal on each of the six unconsolidated charges. Concluding that because Mitchell's testimony supported Northern's conviction on at least one count—and possibly more—of the original information, he would have been no better off under the original information and dismissed his ineffective assistance of counsel claim for

lack of prejudice. The Wisconsin Supreme Court denied his petition for review on January 22, 2008.

Northern filed a petition for a writ of habeas corpus in the Western District of Wisconsin on April 2, 2008. Northern raised both his jury instruction and amended information claims, alleging that his trial attorney's conduct in each of these instances amounted to ineffective assistance of counsel. Northern's petition was referred to Magistrate Judge Stephen Crocker, who, on July 28, 2008, issued a report and recommendation that Northern's petition be denied. The district court issued an order and judgment on August 18, 2008, adopting the magistrate's recommendation and denying Northern's petition. On August 27, 2008, Northern filed a notice of appeal, and on February 18, 2009, we granted Northern's request for a certificate of appealability.

## II. Discussion

This habeas action is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Because Northern is seeking federal habeas relief from a state court conviction reviewed on the merits by a state court, our task is to determine whether the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004); 28 U.S.C. § 2254(d). We review the district court's legal conclusions—it made no findings of

fact—de novo. *Rittenhouse v. Battles*, 263 F.3d 689, 695 (7th Cir. 2001).

Northern first argues that the performance of his trial counsel was constitutionally deficient because trial counsel did not object to an allegedly deficient jury instruction. In Wisconsin, however, claims for postconviction relief must be raised at the first opportunity unless the court finds there was a sufficient reason for failing to raise the claim earlier. *See State v. Escalona-Naranjo*, 517 N.W.2d 157 (Wis. 1994). Wisconsin allows ineffective assistance of counsel claims to be brought on direct appeal, and provides for an evidentiary hearing to develop the necessary factual record. *See State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979).[3] Northern did not do so. To excuse his default, Northern argues that his appellate counsel was ineffective for failing to raise an ineffective assistance claim against his trial counsel on direct appeal.

Northern does not argue that his trial counsel should have challenged the instructions the jury received before

---

[3] Wisconsin has declined to adopt the approach taken by the Supreme Court in *Massaro v. United States,* 538 U.S. 500 (2003), and continues to require defendants to raise ineffective assistance of counsel on direct appeal if possible. *See State v. Lo*, 665 N.W.2d 756, 777 n.12 (Wis. 2003) (Abrahamson, C.J., dissenting) (criticizing majority for reaffirming *Escalona* rather than adopting *Massaro* approach); *see also Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005) (*Massaro* applies only to federal criminal cases).

deliberation, which directed the jurors to determine beyond a reasonable doubt whether or not Northern and each of his three co-defendants possessed, with intent to distribute, more than 100 grams of cocaine. This instruction accurately reflected Wisconsin law, as the quantity finding is used to determine the range of possible penalties, *see* Wis. Stat. § 961.41(1m)(cm), and thus must be found beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The jurors who were initially unable to agree that each defendant possessed more than 100 grams, asked what they should do if they were unable to agree. It is the response to this question that Northern challenges. After discussing the matter with counsel, the trial judge ordered the jury to write in the amount to which it could unanimously agree. In the end, the jury concluded that every defendant had possessed more than 100 grams of cocaine.

Although he concurred in his counsel's decision at the time, Northern now believes his trial counsel should have insisted that the jury receive an instruction asking if it could agree unanimously that the defendant in question possessed more than 40 grams but not more than 100 grams of cocaine (the next lower quantity relevant for sentencing). Northern relies, in particular, on the comments to the pattern jury instruction. *See* Wis JI-Criminal 6001. Comment 1 to the instructions states that it is "preferable to state the question in terms of whether the required amount is present rather than to ask the jury to agree on a specific amount. Requiring such agreement might cause a delay in reaching a verdict that is not related to any essential issue." Comment 2 states that "[i]t may be appropriate to submit more

than one question if there is a reasonable basis for finding that a larger amount was not established and that a smaller amount was established (as in a lesser included offense situation)."

The Wisconsin court of appeals, considering the denial of Northern's first motion for postconviction relief, appears to have reached the merits of Northern's claim by concluding that his counsel's performance was adequate, although the actual holding of the decision is a bit unclear because the court also stated that Northern had waived the issue by not objecting at trial. Since the crux of Northern's claim is that his trial counsel was ineffective for failing to object, it does not seem to us that Northern's claim can be disposed of on this procedural ground. Thus, we review the state court's decision for unreasonable application of *Strickland*, the relevant Supreme Court precedent. Under *Strickland*, a defendant must show both that his attorney performed below minimal professional standards and that the substandard performance prejudiced him. *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009).

The problems with Northern's argument are myriad. The mere fact that the pattern jury instructions differ from those actually given cannot show that his trial counsel's performance was deficient, or even that the instructions were erroneous. Wisconsin courts have "great leeway in forming instructions." *State v. Wolter*, 270 N.W.2d 230, 239 (Wis. Ct. App. 1978). As long as the overall meaning of the instruction was a correct statement of the law, no grounds for reversal exist. *State v. Fonte*, 698 N.W.2d 594, 600 (Wis. 2005). Northern does not appear to argue

that the instruction actually given misstates the law. It seems quite unlikely that it does—the statute simply requires the finder of fact to determine how much cocaine was possessed by the defendants, setting certain threshold amounts that alter the range of permissible sentences. *See* Wis. Stat. § 961.41(1m)(cm). Obviously, an attorney is not constitutionality deficient for failing to lodge a meritless objection. Morever, it appears likely that Northern and his attorney, along with his co-defendants and their attorneys, made a strategic choice to ask that the jury to agree on a specific amount rather than asking about the next lowest statutory amount. Perhaps they thought that the jury would not be able to unanimously agree on any amount. Indeed, the pattern instruction appears designed to avoid the danger of wasted time or deadlock rather than to provide any particular advantage or protection to defendants. Thus, the instruction here may have actually been more favorable to Northern than the pattern instruction. In any event, *Strickland* directs reviewing courts not to second-guess a strategic choice made by an attorney at trial, as this choice clearly was. 466 U.S. at 689-90; *Smith v. Gaetz*, 565 F.3d 346, 354 (7th Cir. 2009).

Nor can Northern establish that he was prejudiced in any way by his counsel's alleged mistake. The jury made clear that its question applied to only one defendant and there is no indication that defendant was Northern. Additionally, after further deliberation, the jury ultimately answered the original question—which took the pattern instruction approach—by finding that all defendants possessed more than 100 grams of cocaine. Had his counsel's hypothetical objection been sustained, there

is no evidence that the jury would have found the lesser 40 grams rather than the 100 grams it actually agreed on. Had the objection been overruled, it seems quite unlikely that Northern would have secured a new trial on appeal, as the instruction appears to be a correct statement of the law. An ineffective assistance claim against Northern's trial counsel based on the jury instructions would have been a very weak claim, and his appellate counsel's decision not to bring it was entirely reasonable.

Northern's other theory is that his trial counsel was ineffective for not objecting to the amended information filed by the prosecutor on the first day of trial. Northern did not raise this claim on direct appeal or in his initial postconviction proceedings, but the state court of appeals found that he had a sufficient reason for not doing so and reached the merits of his ineffective assistance claim. We therefore review the state court's decision to see if it unreasonably applied *Strickland*, the relevant precedent.

The state court concluded that Northern could not establish prejudice because nothing in the record indicated that the trial court would have forced the state to proceed on the original information, rather than the amended one tendered on the day of trial. The state court also found Northern's claim that he would have been acquitted on each of the charges in the original, multiple-count indictment, entirely speculative. We agree.

First, it appears unlikely that the trial judge would have forced the government to proceed with the initial information, rather than the one filed on the morning of trial. Indeed, the previous day, when the prosecution

indicated that Hollie Peterson would be cooperating with the government, the judge rejected defendants' suggestion that the case proceed to trial with Peterson's testimony excluded. Instead, he offered a two-month adjournment to give the defense time to prepare (an offer the defense rejected). Northern argues that the judge would have treated the amended information differently because he would have been troubled by the prosecution's conduct, but there is no evidence to support that claim. Indeed, the only basis for Northern's claim that the prosecution misled the defendants and the court is the bare fact that the amended information differed from the original information beyond simply dropping the charges against Peterson. Given that less than twenty-four hours elapsed between the time when the prosecution informed the court that it was amending the information and when it produced the amended information—most of those outside of regular business hours—this fact hardly indicates an intent to mislead the court. Moreover, the expanded timeframe appears to have been used solely to accommodate the testimony of Peterson. Defendants had already declined an opportunity to take additional time to prepare for that testimony. Thus, Northern's argument that the court would have held the prosecution to the original information is not only entirely speculative, but implausible.

In addition, even if the prosecution had been held to the earlier information, there is no indication that the outcome of the proceeding would have been different. Northern argues that without the amended information Peterson's testimony would have been excluded. However, even without Peterson's testimony, there was

plenty of evidence in the record to convict Northern. The government's other witness, Sheri Mitchell, testified that Northern delivered one-quarter kilogram of cocaine to her home in January of 2001. She also testified that between January and July of 2001, Northern again delivered one-quarter kilogram of cocaine on five to ten different occasions. As the original information covered the period from January to July of 2001, this testimony would have been no less relevant if the government was proceeding under the original information. Peterson's testimony, by contrast, involved only one delivery, at an unknown date but late enough in 2001 that she still had most of it when she was arrested. Thus, even if Northern could establish that the trial judge would have held the government to the original information—and he cannot—he still cannot show that there is a reasonable probability that the outcome of his trial would have been different. The state court thus reasonably applied *Strickland* when it denied Northern's ineffective assistance of counsel claim against trial counsel based on the amended information.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Northern's petition for a writ of habeas corpus.