COURT OF APPEALS
DECISION
DATED AND FILED

February 28, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP127**

Cir. Ct. No. **2014CF1584**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROMAINE J. REED,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Romaine J. Reed, *pro se*, appeals an order denying his motion for postconviction relief under WIS. STAT. § 974.06 (2021-22).[1]  Reed contends that his trial attorney was ineffective for failing to retain and present at trial a child psychologist.  In addition, Reed requests that this court grant a new trial in the interest of justice.  For the reasons set forth below, we reject Reed's arguments, and affirm.

**BACKGROUND**

¶2    Reed was charged with one count of repeated sexual assault of his daughter, Annie, between May and August 2012.[2]  In 2014, the case went to trial.  Annie, who was five years old at the time of the trial, testified that Reed had inserted his penis into her mouth and into her bottom on more than two occasions when she was three years old.  Annie also testified that Reed called what came out of his penis during the assaults "yogurt," and that he made her eat it.

¶3    Melanie, Annie's mother, testified that Reed had lived with them in 2012.  In May and June of 2012, Melanie stated that Reed would often be home alone with Annie while Melanie was at work.  In May of 2012, Melanie testified that Annie began wetting herself frequently.

¶4    Melanie further testified that Annie began to make comments about Reed's penis.  In November of 2012, Annie told her that "[Reed] kisses my snood," which is a term the family uses to refer to the vagina.  Melanie testified

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For confidentiality purposes, we refer to the child victim and her mother by pseudonyms.

that on another occasion, while Annie was eating cherries, Annie said this is "what [Reed's] penis feel[s] like." Additionally, when Melanie was changing her son's diaper, Annie said "his wicky is little," and Reed's "wicky looks like that just bigger." Annie also told her that Reed had put his penis in her mouth and told her to touch his penis in a certain way. Annie showed Melanie the motion.

¶5 In addition to Annie and Melanie, the State called a number of other witnesses including Amanda Didier, a child forensic interviewer, who testified generally about child sexual assault disclosure. The State also moved into evidence two interviews of Annie, one conducted by Officer Cindy Carlson, and one conducted by Rebecca McFadden, a social worker from the Bureau of Milwaukee Child Welfare. The defense did not present any witnesses.

¶6 A jury found Reed guilty as charged. Reed was sentenced to a total of thirty years of initial confinement and fifteen years of extended supervision.

¶7 In 2016, Reed moved for postconviction relief asserting that his trial attorney was ineffective for failing to cross-examine Melanie about the fact that she was upset at Reed's family for filing taxes on Reed's behalf and claiming a deduction for Annie. The motion also alleged that trial counsel should have presented testimony from Paris, Reed's brother, that Melanie had threatened that Reed would "do the max if she did not get her tax money." According to the motion, this was relevant and material to Melanie's credibility and constituted a motive for Melanie to "coach" Annie. The circuit court denied the motion without a hearing.

¶8 Reed appealed to this court, arguing that the circuit court erroneously denied his postconviction motion. Additionally, Reed contended that: the evidence was insufficient to support the verdict; the circuit court should have

granted a mistrial; the circuit court erroneously overruled his objections to witness testimony; and he was entitled to a new trial in the interest of justice. This court affirmed, *see State v. Reed (Reed I)*, No. 2017AP883-CR, unpublished slip op. (WI App. Sept. 18, 2018), and the Wisconsin Supreme Court denied review.

¶9      Subsequently, Reed, *pro se*, filed the WIS. STAT. § 974.06 motion underlying this appeal. Reed alleged that his trial attorney was ineffective for failing to retain and present a child psychologist.

¶10     In support of his motion, Reed retained Dr. Carol Mellen to examine his case. Based on Mellen's report, which Reed filed with his motion, Reed contended that: (1) investigators relied on an incorrect format to obtain Annie's statements; (2) the determination that Annie could differentiate between the truth and a lie was flawed; (3) one of the investigators often completed Annie's narratives with her own opinions of what Annie may have experienced, creating bias; (4) there was no standardized measure of the quality of Annie's behavioral presentation or developmental status; (5) investigators used leading questions, which increased the likelihood of error; (6) the use of anatomical figures tainted Annie's statements; and (7) the multiple interviews of Annie tainted her statements. Additionally, Reed contended that there were multiple signs that Annie was "coached," and extrinsic factors provided for Annie's use of sexual knowledge and terms.

¶11     In addition to the report from Dr. Mellen, Reed also filed an affidavit from himself. The affidavit alleged that he had requested that his trial attorney and his postconviction attorney retain an expert witness "to review the statements of [Annie] and the methodology to obtain such statements." Reed indicated that

he was unaware of whether either attorney attempted to, or did in fact, retain any experts to assist with his defense.

¶12     After briefing, which included supplemental briefing to address whether there was a reasonable probability of a different result if an expert had testified, the circuit court denied the motion without an evidentiary hearing. The circuit court found that the "impact that testimony from Dr. Mellen would have had on the trial [is] wholly speculative," and that Reed had failed to establish a reasonable probability of a different result. The court stated that the evidence of Reed's guilt was "overwhelming" and the argument that trial counsel and postconviction counsel were ineffective "amounts to little more than 'Monday morning quarterbacking.'"[3]  This appeal follows. Additional facts are referenced as needed below.

## DISCUSSION

¶13     On appeal, Reed renews the argument in his WIS. STAT. § 974.06 motion that his trial attorney was ineffective for failing to retain and present a child psychologist.

¶14     When a defendant, like Reed, seeks relief following a prior postconviction motion and appeal, a WIS. STAT. § 974.06 motion must establish a "sufficient reason" for failing to raise any issues that could have been raised in the earlier proceedings. *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994). In the absence of a sufficient reason, a claim that could have

_____

[3] Reed filed a motion for reconsideration, which was denied. Reed does not appeal the order denying his motion for reconsideration.

been raised earlier is procedurally barred. *See id.* at 186. Whether a claim is procedurally barred is a question of law that we review *de novo*. *See State v. Fortier*, 2006 WI App 11, ¶18, 289 Wis. 2d 179, 709 N.W.2d 893.

¶15    In his WIS. STAT. § 974.06 motion, Reed first contended that his newly developed claim was not procedurally barred under *Escalona-Naranjo* because he lacked previous knowledge of the claim. In support, Reed pointed to *State v. Howard*, 211 Wis. 2d 269, 287-88, 564 N.W.2d 753 (1997), *overruled on other grounds by State v. Gordon*, 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765.

¶16    *Howard*, however, is inapposite. *Howard* held that the defendant's lack of awareness of the legal basis of his claim constituted a sufficient reason for failing to previously raise the legal issue because there was "a new rule of substantive law." *Id.* at 287-88. Here, Reed does not point to any change in the law that might have made him aware of a claim now that he was not aware of during his direct appeal. As the State observes, *Escalona-Naranjo* would become meaningless if an incarcerated defendant could simply describe his or her lack of legal training to overcome the procedural bar.

¶17    In addition, Reed contended that his claim was not procedurally barred based on ineffective assistance of postconviction counsel.

¶18    In some circumstances, a claim of ineffective assistance of postconviction counsel may constitute a sufficient reason for an additional motion. *See State v. Romero-Georgana*, 2014 WI 83, ¶36, 360 Wis. 2d 522, 849 N.W.2d 668. A bare allegation of ineffective assistance of postconviction counsel, however, is not sufficient to satisfy the procedural bar imposed by WIS. STAT. § 974.06. Rather, a defendant must "make the case" of counsel's alleged

ineffective assistance. *See **State v. Balliette***, 2011 WI 79, ¶67, 336 Wis. 2d 358, 805 N.W.2d 334.

¶19    When evaluating an ineffective assistance of postconviction counsel claim, we apply the well-established test in ***Strickland v. Washington***, 466 U.S. 668 (1984).    Under ***Strickland***, a defendant must show both that counsel performed deficiently, and that the deficiency was prejudicial.  ***Id.*** at 687.   To establish deficient performance based on postconviction counsel's failure to raise particular issues, a defendant must allege and show that the new issues are "clearly stronger" than the issues that counsel did present.  *See **Romero-Georgana***, 360 Wis. 2d 522, ¶4.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  ***Strickland***, 466 U.S. at 694.  If a defendant fails to make an adequate showing as to one prong of the test, we need not address the other.  ***Id.*** at 697.

¶20    When a defendant raises a claim of ineffective assistance of counsel, an evidentiary hearing is a prerequisite to appellate review.  ***State v. Sholar***, 2018 WI 53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89.  On appeal, when evaluating whether a defendant is entitled to a hearing, we first independently determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief."  ***State v. Ruffin***, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432.  If a WIS. STAT. § 974.06 motion does not raise sufficient facts, "or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court has the discretion to grant or deny a hearing.  ***Balliette***, 336 Wis. 2d 358, ¶18 (citation omitted).

7

¶21    In this case, the State contends that Reed's ineffective assistance claim is procedurally barred because Reed did not sufficiently explain how his newly developed claim is "clearly stronger" than the issues raised by postconviction counsel.    Additionally, the State contends that the record conclusively demonstrates that his ineffective assistance claim is meritless.

¶22    Even if we were to assume that Reed's ineffective assistance claim is not procedurally barred, we agree with the State that the record conclusively shows that Reed is not entitled to relief.  Reed has failed to demonstrate that he was prejudiced. *See Strickland*, 466 U.S. at 694.

¶23    In regards to prejudice, we understand Reed's WIS. STAT. § 974.06 motion to suggest that without an expert, such as Dr. Mellen, the jury did not hear the problems with Annie's interviews.  While it is true that the defense did not present an expert, Reed ignores that during the trial, his attorney challenged the State's case by extensive cross-examination. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) (stating that *Strickland* does not require "for every prosecution expert an equal and opposite expert from the defense.  In many instances cross-examination will be sufficient to expose defects in an expert's presentation.").

¶24    For example, during the forensic interviewer's testimony, trial counsel elicited that it was necessary to ask "open questions," and that one of the questions Annie was asked was an improper leading question.  Subsequently, during the cross-examination of the social worker who interviewed Annie, trial counsel highlighted Annie's odd answers to the questions that were used to gauge her ability to distinguish between the truth and a lie.

¶25    Trial counsel also elicited testimony that some of the terminology Annie used was language she learned from others.  During her cross-examination,

Annie testified that she learned the word "molester" from the police or her grandma, and she learned the term "sex offender" from her grandma. Trial counsel also questioned Annie regarding how many times she discussed with her grandma, her mother, and the prosecution her account of what happened with Reed. Additionally, trial counsel highlighted Annie's inconsistent statements.

¶26 Moreover, during closing arguments, trial counsel challenged Annie's accounts of what occurred with Reed. Trial counsel emphasized the inconsistencies in Annie's statements. Trial counsel also questioned Annie's use of language, stating in particular that "children that age don't know the word 'molester.'"

¶27 Thus, based on the record, we are not persuaded that had trial counsel retained and presented expert testimony that there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. At best, an expert would have highlighted the issues with the State's case that were obvious based on the testimony elicited during trial. Accordingly, we conclude that the record conclusively demonstrates that Reed is not entitled to relief, and the circuit court properly denied Reed's motion without an evidentiary hearing. *See Balliette*, 336 Wis. 2d 358, ¶18.

¶28 Finally, Reed contends that we should exercise our discretion to grant a new trial pursuant to WIS. STAT. § 752.35. We may order a new trial under § 752.35 "if it appears from the record that the real controversy has not been fully tried" or "it is probable that justice has for any reason miscarried[.]" *Id.* "We exercise this power 'only in exceptional cases.'" *State v. Sugden*, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted).

¶29    We decline to use our discretionary authority to order a new trial here.  As stated above, the record conclusively demonstrates that Reed is not entitled to relief based on his ineffective assistance of counsel claim.  Reed contends that this case is exceptional because it is a "he said she said" case and there was "no physical evidence or eye witnesses."  Reed, however, ignores the fact that there was an eyewitness—Annie—who testified that Reed repeatedly sexually assaulted her.  Additionally, the mere fact that this case is a credibility case does not render it exceptional.  *See id.*

¶30    Therefore, for the reasons stated above, we conclude that the circuit court properly denied Reed's WIS. STAT. § 974.06 motion without an evidentiary hearing.  In addition, we decline to exercise our discretionary authority to order a new trial in the interest of justice.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.